PRENTICE LUMBER COMPANY, Inc.; Plaintiff and Apel-
lant, *v.* PAUL SPAHN, et al., Defendant and Respondent.

No. 11788.
Submitted June 11, 1970.
Decided Aug. 25, 1970.
474 P.2d 141.

Boone, Karlberg & Haddon, Karl Karlberg, argued, Missoula, for plaintiff and appellant.

Garlington, Lohn & Robinson, George D. Goodrich, argued, Missoula, for defendant and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order of the district court of the fourth judicial district, Missoula County, dismissing a complaint. Plaintiff is Prentice Lumber Co. Inc., a Montana corporation located in Missoula and engaged in the wholesale lumber business (hereinafter referred to as Prentice). Defendant is Paul Spahn an individual engaged in the retail lumber and construction business in Sun Prairie, Wisconsin (hereinafter referred to as Spahn).

Prentice sought to recover $9,237.71 alleged to be due it for lumber sold and delivered to Spahn. Spahn was served in the state of his residence, Wisconsin. The only direct order for lumber by Spahn was made to Prentice in January 1969, and was paid for. Orders for lumber prior to January 1969 were made by Spahn to Gilbert Foster of Madison, Wisconsin, a commission salesman. Foster placed orders to Prentice. Foster's fee or commission was paid by Prentice. Lumber ordered by Spahn from Foster was shipped by Prentice, on Foster's order, direct to Spahn in Wisconsin. Spahn paid Prentice direct by check initially, until advised by Foster to pay Foster. On one occasion, Spahn paid Foster and Prentice jointly. There were sixteen transactions between the parties; Prentice and Spahn have never met; and, Spahn has never been in Montana.

An amended complaint was filed on June 10, 1969. Initial appearance by Spahn was under what was termed a motion by "limited special appearance". The motion was filed on June 30, 1969 in three parts:

"1. The Complaint fails to state a claim against either Defendant upon which relief can be granted.

"2. The State of Montana, and this Court lack jurisdiction over the matters alleged in the subject matter set forth in the Amended Complaint

"3. There is insufficiency of service of process on both of the named Defendants"

On July 14, 1969 the clerk "noticed" that "Defendant's Motion to Dismiss plaintiff's amended complaint denied—defendants granted 20 days to further plead." This "notice" was made by the clerk's office under district court Rule 4 which provides:

"*Submission of Motions.*

"(a) Upon serving and filing a motion permitted by Rule 12, MR Civ.Proc., or within five (5) days thereafter, the moving party shall serve and file a brief. The adverse party shall have ten (10) days thereafter in which to serve and file an answer brief. A reply brief may be served and filed within ten (10) days thereafter. Upon the filing of briefs, the motion shall be deemed made and submitted and taken under advisement by the Court, unless the Court orders oral argument on said motion. The Court may, in its discretion, order oral argument either on its own motion or upon an application contained in the brief of either party.

"Failure to file briefs within the prescribed time shall subject such motions to summary ruling, and the failure to file a brief by the moving party shall be deemed an admission that, in the opinion of counsel, the motion is without merit, and such failure to file a brief by the adverse party shall be deemed an admission that, in the opinion of counsel, the motion is well taken.

"The Clerk in each county in the District shall keep a record of all motions and briefs relating thereto. The Clerk shall on the next Court Day following the filing of a reply brief, or the Court Day next following the lapse of time of either party for the filing of a brief, present such motion to the Court for decision.

"(b) Extensions of time for filing briefs or for continuance of the hearing on a motion may be granted on oral application without notice to the adverse party by order of Court. Notice of such orders shall be given by the Clerk. All requests for extension of time or continuance, whether written or oral, shall be accompanied by an appropriate form order."

On August 5, 1969 a motion was made by Spahn to:

"* * * set aside that certain default dated July 14, 1969, submitting herewith its Memorandum in support of its Motion to Dismiss for lack of jurisdiction and insufficiency of process."

Here, we note there had been no "default" except in the failure to file a brief as required by Rule 4 of the district court rules. Further, now for the first time a motion under Rule 12(b)(2), Montana Rules of Civil Procedure, was being made. As to the latter, Rule 4B(1) (a), M.R.Civ.P., was being brought in the so-called "long arm" rule.

The district court then made an order as follows:

"* * * And the Court, having reviewed the record and the pleadings at length and having heard and pondered the arguments of counsel and having considered their memoranda and the citations therein, and the Court being now fully advised in the premises, finds no jurisdiction raised in this Montana District Court by the process served upon the defendant in the State of Wisconsin, and further, finds no 'minimum contacts' raised in the State of Montana by the actions of the defendant, whether in the State of Montana or in the State of Wisconsin * * *".

Judgment entered against plaintiff and this appeal followed.

If a defendant does not plead lack of jurisdiction over the person in his initial response to a complaint, has a defendant, under Rule 12, M.R.Civ.P., the right to susequently enter such a plea, or has he waived this defense? Regardless of whether or not a defense of lack of jurisdiction over the person is deemed waived, would Montana have proper jurisdiction under Rule 4,

M.R.Civ.P., over the person of a nonresident defendant under the circumstances of this case? These are the contentions on this appeal.

Our inquiry must begin with the parties' initial pleadings. Spahn's response on June 30, 1969 to Prentice's complaint was by a motion proffering among other defenses a lack of jurisdiction over the "subject matter". No defense for a lack of jurisdiction over the person was urged in this motion.

Rule 12, M.R.Civ.P., is entitled: "Defenses and Objections—When and how presented—By pleading or motion—Motion for judgment on pleadings." Subdivision (g) provides that a party making a motion under Rule 12 may join all defenses set forth in subdivision (b), which includes lack of jurisdiction over the person and over the subject matter. Specifically, Rule 12(g) reads:

"CONSOLIDATION OF DEFENSES IN MOTION. A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h) (2) hereof on any of the grounds there stated."

Subdivision (h) (2) of Rule 12 is not pertinent to the motion under consideration, therefore it has no effect on the demands of subdivision (g).

In addition, Rule 12(h) (1) provides for waiver of defenses:

"A defense of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."

■ Coordinating facts with rules, Spahn's responsive motion is devoid of a lack of jurisdiction over the person, and Rule 12(g) specifically prohibits subsequent assertions of defense which do not appear in original motions. Strict application of this rule prevents Spahn from injecting a plea of a lack of jurisdiction over the person in his motion of August 5, 1969. Furthermore, Rule 12(h) (1) speaks directly to the situation at hand:

"A defense of lack of jurisdiction over the person * * * is waived (A) if omitted from a motion in the circumstances described in subdivision (g)".

Confronting this explicit and particularized command, Spahn must be deemed to have entirely waived a defense of lack of jurisdiction over the person. However, even if Spahn could assert this defense in a later pleading, it is evident that the Montana district court does have jurisdiction over the person in this case.

Federal law describing requirements of due process under the Fourteenth Amendment to the United States Constitution regarding jurisdiction over the person has been outlined by Federal District Judge Jameson in two recent cases. Boit v. Emmco Insurance Company, D.C., 271 FSupp. 366, 369; Continental Oil Company v. Atwood & Morrill Company, D.C., 265 F.Supp. 692, 695.

In *Boit*, referring to the case of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, Judge Jameson said:

"In that case the Court said that the test of due process is not dependent upon the quantity of the defendant's contacts with the state, but, 'Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.' (326 U.S. at 319, 66 S.Ct. at 160).

"In McGee v. International Life Inc. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, it was held that a single transaction

may be sufficient to satisfy the requirements of 'minimum contacts'. The Court, after reviewing the historical development in this area stated: ''Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents.' (355 U.S. at 222, 78 S.Ct. at 201).

''The sweeping effect of McGee was limited somewhat the following year by Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, where the Court said, 'But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * *' The Court held further that the application of the minimum contact rule 'will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the foreign State, thus invoking the benefits and protections of its laws.' (357 U.S. at 251, 253, 78 S.Ct. at 1240).

In the present case, Spahn paid Prentice direct by check on several occasions; in January 1969 Spahn made a direct order for lumber to Prentice which was paid for direct by check. The federal test is satisfied by this conduct because Spahn purposely availed himself of the opportunity to transact business within Montana by his direct order of January 1969, and by his clear intent to complete transactions with payments by check on several other orders, thereby invoking the benefits and protections of Montana's laws. This litigation results from an alleged debt due on these transactions, and since no extra-ordinary hardship appears in the record, it cannot be viewed as unfair to require Spahn to submit to the jurisdiction of Montana wherein payment on the alleged debt is due.

With regard to Montana state law, Rule 4, M.R.Civ.P. is entitled: ''Persons subject to jurisdiction—Process—Service'', and under subdivision 4B(1) delineates in part:

"\* \* \* any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

"(a) the transaction of any business within this state".

The question is how broad the jurisdictional scope is under this rule.

No case has been decided precisely on this statutory subdivision in Montana but more and more state courts with sweepingly constructed long arm statutes have turned to the federal test in construing their statutes. In a consentient case, State ex rel. White Lumber Sales, Inc. v. Sulmonetti, 87 Or.Adv.St. 649, 448 P.2d 571, 573, 574, the Supreme Court of Oregon interpreted an Oregon statute very similar to Montana's statute to reach and confer limits of jurisdiction as broadly as the federal test allows. The statute involved was Oregon Revised Statute 14.035:

"(1) Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person and, if an individual, his personal representative to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:

"(a) The transaction of any business within this state".

Plaintiff in the Oregon case was a wholesale lumber broker with whom telephone orders had been placed by a Florida corporation. The Florida corporation cancelled part of the orders and was sued by the Oregon broker. The court held that the nonresident defendant had transacted business within the state by virtue of the telephone orders and was subject to the jurisdiction of Oregon. The Oregon Supreme Court's rationale was launched by these words:

"In State ex rel. Western Seed Production Corp. v. Campbell, 250 Or. 262, 442 P.2d 251 (1968), we held that the Legislative Assembly intended the long-arm statute to reach to the outer limits of federal constitutional due process"

Therefore, bearing in mind that the facts of the instant case square with the federal test and recognizing a prevailing trend toward expanding the permissible scope of state jurisdiction over the person or nonresident defendants, it is this Court's opinion that the breadth of Rule 4B(1) (a), M.R.Civ.P., encompasses the facts of this case and confers Montana's jurisdiction over Spahn.

Judgment reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON and DALY concur.